# Spangler *v.* Markley, Appellant.

*Negligence—Automobiles—Fright of horse—Duty as to use of highways.*

1. For the purpose of avoiding collision and accident, all travelers on a public highway should observe due care in accommodating themselves to each other. Their rights are mutual and co-ordinate, and it is the duty of each so to exercise his right of passage as not to cause injury to another, having a like right. Each is under the obligation to exercise ordinary care, and each has the right to expect that such ordinary care will be exercised by the other, and to rely upon this in determining his own manner of using the road. The mere fact that a horse, which had previously been gentle and easily controlled, shows signs of being unruly when driven in view of an automobile, does not impose upon the owner the duty to refrain from using him on the highway with ordinary care.

2. If the operator of an automobile knows, or by the exercise of ordinary care may know, that the movement or noise of his machine will render an animal unmanageable, he must use all the care and caution which a careful and prudent driver should exercise under the same circumstances. He has the right to assume, and to act upon the assumption, that every person whom he meets will also exercise ordinary care and caution according to the circumstances and will not negligently or recklessly expose himself to danger, but rather make an attempt to avoid it. But when an operator has had time to realize, or by exercise of a

proper lookout should have realized, that a person whom he meets is in a perilous position, or in a position of disadvantage, and therefore seemingly unable to avoid the coming automobile, he must exercise increased exertion to avoid a collision, or what is equivalent, the fright of a horse induced by an automobile.

3. In an action to recover damages for personal injuries sustained as the result of a fright of a horse by an automobile, plaintiff, who was about seventy years of age, testified that while driving on a dark evening, he met the defendant coming from the opposite direction on a public road in an automobile; that the defendant had no lights on his automobile, and that he, the plaintiff, was unable to notice its approach until it was almost on him; that he was driving a perfectly tractable and gentle horse on the proper side of the road; and when the automobile was about twenty-five steps away he recognized it, and rising in his buggy, held up his hand as a signal to the driver of the car to stop, and called out: "Hold on, wait, stranger, until I get out and hold my horse." The machine was either slowed down or stopped in obedience to this signal, and then the plaintiff attempted to get out of his buggy, in order to go to the head of the horse; and when in this situation, the machine was suddenly started and approached the buggy with considerable noise, which caused the horse to shy and run against the fence, so that the plaintiff was thrown out over the wheel, and quite seriously injured. This testimony was contradicted by the defendant and other persons who were in the automobile. *Held*, that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued March 8, 1909. Appeal, No. 4, March T., 1909, by defendant, from judgment of C. P. Adams Co., Aug. T., 1908, No. 165, on verdict for plaintiff in case of Samuel G. Spangler v. William D. Markley. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before SWOPE, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $640. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*William Hersh*, with him *Edward A. Weaver*, for appellant.— If one deliberately drives a horse along the highway knowing

he will frighten at certain objects, he assumes the risk of the frightening of the horse and must therefore take the consequences: Winner v. Oakland Twp., 158 Pa. 405; Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; Keeley v. Shanley, 140 Pa. 213; Piollet v. Simmers, 106 Pa. 95; Hazel v. Pass. Ry. Co., 132 Pa. 96; P., W. & B. R. R. Co. v. Stinger, 78 Pa. 219.

The weight of the evidence clearly showed that the defendant was observing all the restrictions of statute and using reasonable care in the operation of the machine and his equal rights to use the highway with a driver of a team, cannot be disputed: Indiana Springs Co. v. Brown, 165 Ind. 465 (74 N. E. Repr. 615); Huddy, Law of Automobiles, p. 27, 46.

One who knows that a horse is afraid of automobiles, and yet deliberately drives behind the horse, toward the automobile, without exercising proper care for her own safety, is guilty of contributory negligence: L. & N. R. R. Co. v. Schmidt, 81 Ind. 264; Morgan v. Central R. R. Co., 77 Ga. 788.

Injuries arising from mere fright of horse by a vehicle, do not render the owner of vehicle liable: Holland v. Bartch, 120 Ind. 46 (22 N. E. Repr. 83); Nason v. West, 31 Miss. 583; Yingst v. Ry. Co., 167 Pa. 438; P., W. & B. R. R. Co. v. Stinger, 78 Pa. 219; Hazel v. Pass. Ry. Co., 132 Pa. 96; Davison v. Tractison Co., 10 Pa. Superior Ct. 442; Eichman v. Buchheit, 128 Wis. 385 (107 N. W. Repr. 325); House v. Cramer, 10 L. R. A. (N. S.) 655.

*W. C. Sheely,* with him *J. L. Butt,* for appellee.—One operating an automobile on the public highway owes to persons driving horses thereon the duty to carefully control and operate the machine so as to avoid causing needless injury; and this duty requires him to take into account the character of his machine, its general appearance, the noise accompanying its operation, its new use in the vicinity, its tendency to frighten horses, and, from such and all other pertinent considerations, to proceed with that speed and caution which reasonable care requires according to the place and presence of other travelers: Indiana Springs Co. v. Brown, 165 Ind. 465 (74 N. E. Repr. 615); Murphy v. Wait, 102 App. Div. 121;

Knight v. Lanier, 69 App. Div. 454; Hennessey v. Taylor, 198 Mass. 583 (76 N. E. Repr. 224); Christy v. Elliott, 216 Ill. 31 (74 N. E. Repr. 1035); McIntyre v. Orner, 166 Ind. 57 (76 N. E. Repr. 750).

If the plaintiff under the belief that he was in sudden danger attributable to the negligence of the appellant in the driving of his automobile did get out the buggy backwards, or even if he had jumped out of the buggy and had been injured thereby, he would not be guilty of contributory negligence even though the act would be regarded as a negligent one if performed under circumstances not indicating sudden peril: Clarke v. Pennsylvania Co., 132 Ind. 199 (31 N. E. Repr. 808); Penna. R. R. Co. v. Werner, 89 Pa. 59; Breunniger v. Penna. R. R. Co., 9 Pa. Superior Ct. 461; Bard v. Philadelphia & Reading Ry. Co., 199 Pa. 94.

Under any circumstances the question whether this action on the part of the plaintiff constituted negligence was for the jury: Penna. R. R. Co. v. Ogier, 35 Pa. 60.

OPINION BY ORLADY, J., May 10, 1909:

In this action of trespass the plaintiff recovered a verdict of $640, as damages for injuries which were caused by the negligence of the defendant in operating his automobile on a public highway. The case was tried with great care in the court below, the plaintiff submitting fifteen requests for instructions, and the defendant twenty-four; of the latter, nineteen were affirmed, three were refused, and two were answered with a qualification, so that all the disputed questions, which were purely of fact, were submitted to the jury, to determine whether the defendant was guilty of negligence or the plaintiff guilty of contributory negligence.

The first assignment of error is founded upon the refusal of the court to affirm the third point as presented by the defendant, viz.: "If the jury believe that the plaintiff was driving a horse likely to scare at automobiles, and knowing that he was about to meet an automobile could have gotten into the opening at the yard, and thus avoided the accident, he would be guilty of contributory negligence, and cannot recover a verdict."

Which was answered as follows: "This point we refuse to affirm, but leave for your determination whether or not under all the evidence, the plaintiff was guilty of contributory negligence." The court refused to affirm the plaintiff's fourth point, viz.: "If the plaintiff thinking his horse would take fright at an automobile, and admitting as he did, that he could have gotten into an open yard, for safety, he would be guilty of contributory negligence if he failed to take this precaution to avoid the accident." And the third was as follows: "If the jury believe from the evidence that the defendant when within 150 yards of the plaintiff blew his horn, and slowing up, had his machine in control; the plaintiff gave him no signal to stop, and that the defendant believed that the plaintiff was about to drive into the yard, the verdict should be for the defendant." Both of which questions were submitted to the jury, under all the evidence in the case, to determine whether or not the defendant was guilty of negligence.

The plaintiff, who was about seventy years of age, testified that he met the defendant coming from an opposite direction on the public highway at about eight o'clock on the evening of May 23, 1907; and that at the time it was quite dark. That the defendant had no lights on his automobile, and that he was unable to notice its approach until it was almost on him; that he was driving a perfectly tractable and gentle horse on the proper side of the road; and when the automobile was about twenty-five steps away he recognized it, and rising in his buggy, held up his hand as a signal to the driver of the car to stop, and called out: "Hold on, wait, stranger, until I get out and hold my horse." The machine was either slowed down or stopped in obedience to this signal, and then the plaintiff attempted to get out of his buggy, in order to go to the head of the horse; and when in this situation, the machine was suddenly started and approached the buggy with considerable noise, which caused the horse to shy and run against the fence, so that the plaintiff was thrown out over the wheel, and quite seriously injured. That immediately after the happening of the accident, the defendant came to him, and stated that he was the man who had been running the automobile, when he said: "Stranger, if

you had just waited until I had got out and held my horse, the
thing would not have happened, but you did not wait on me,
you rushed up and scared my horse." To which the defendant
replied that it was too dark, and he could not see. This state
of facts was contradicted directly and unequivocally by the
defendant and other witnesses who were in the automobile with
him; their contention being that the defendant had approached
the plaintiff with the machine under control, and had believed
that the plaintiff was about to leave the highway, which situa-
tion he described as follows: "I did not know but what the man
lived at those buildings; it resembled very much a driveway
in there. I know that it was an entrance to get up to the barn
building, and I did not know but what the team might probably
turn in there when I seen him stop, and drifted gradually to-
ward him."

The law applicable to the rights and duties of persons meeting
on a public highway has been frequently announced. For the
purpose of avoiding collision and accident all travelers should
observe due care in accommodating themselves to each other.
Their rights are mutual and co-ordinate, and it is the duty of
each so to exercise his right of passage as not to cause injury
to another, having a like right. Each is under the obligation
to exercise ordinary care, and each has the right to expect that
such ordinary care will be exercised by the other, and to rely
upon this in determining his own manner of using the road.
The mere fact that the horse, which had previously been gentle
and easily controlled, showed signs of being unruly when driven
in view of an automobile, did not impose upon the owner the
duty to refrain from using him on the highway with ordinary
care. The extraordinary contention that it is contributory
negligence on the part of the owner of a horse of ordinarily
gentle and tractable habits to use him on the highway, simply
because the animal occasionally becomes frightened at an auto-
mobile, cannot be sustained.

Since automobiles have come into use on our streets and
highways, it has been the experience of all that they tend to
frighten some horses, and it is the duty of a person operating
such a machine, in order to avoid accidents when a horse does

become frightened, to exercise reasonable care; it is doubtless unpleasant to be obliged to slow down a rapidly running machine to accommodate a person driving or riding a country horse that does not readily become accustomed to the automobile innovation, but it is certainly well understood that if such a driver ignores a proper signal to stop and exercise ordinary care under the circumstances, then if an injury follows, he must respond in damages for the injuries which have been caused by his neglect.

Automobiles are lawful means of conveyance and have equal rights upon the public roads with horses and carriages, but their use must be accompanied with that degree of prudence and consideration for the rights of others which is consistent with safety. If the operator of an automobile knows, or by the exercise of ordinary care may know, that the movement or noise of his machine will render an animal unmanageable, he must use all the care and caution which a careful and prudent driver should exercise under the same circumstances. He has the right to assume, and to act upon the assumption, that every person whom he meets will also exercise ordinary care and caution according to the circumstances and will not negligently or recklessly expose himself to danger, but rather make an attempt to avoid it. But when an operator has had time to realize, or by the exercise of a proper lookout should have realized, that a person whom he meets is in a perilous position, or in a position of disadvantage, and therefore seemingly unable to avoid the coming automobile, he must exercise increased exertion to avoid a collision, or what is equivalent, as in this case, the fright of the horse induced by the automobile.

The plaintiff testified that the horse was trustworthy; he had an equal right to the use of the highway with the automobile; he was bound by the same rules of law, and to exercise the same degree of care as the other users of the highway; whether he did so or not was purely a question for the jury. The degree of care required of each depended upon the circumstances. If one is using a young, nervous, skittish horse, unaccustomed to unusual sights or sounds, he must exercise care in proportion to the risk he volunteers to take; and even a staid and veteran

horse may be liable to sudden fright induced by unusual conditions, as is well known by all drivers, but this does not imply that the driver of an automobile has any superior right on the road, and independent of any statute on the subject, requiring drivers of automobiles to stop on a signal, it is his duty to stop when he sees or should see that he is frightening a horse, by proceeding on his course.

The whole question was fully and fairly submitted to the jury, and the verdict was fully warranted by the evidence.

The assignments of error are overruled, and the judgment is affirmed.